1  Laura Saitta
   3525 Del Mar Heights Road #1834
2  San Diego, CA 92130
   Telephone (703) 677-2174
3  Email SVGK2025@gmail.com

4  Plaintiff in Pro Per

**FILED**

MAY 27 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

LAURA SAITTA, an individual;

       Plaintiff,

vs.

Greystar Real Estate Partners, LLC, d/b/a "Greystar," a limited liability company;

Greystar Management Services, LLC, d/b/a "Greystar," a limited liability company;

Greystar California, Inc., d/b/a "Greystar," a corporation;

BOB FAITH, an individual;

KILROY REALTY, L.P., a limited partnership;

ANGELA AMAN, an individual;

JOHN B. KILROY JR., an individual,

THERESA BARR, an individual;

and DOES 1 to 100, inclusive;

       Defendants.

Case No. **25-cv-1135-DMS-AHG**

**AMENDED COMPLAINT**

1. **VIOLATION OF FEDERAL HOUSING ACT 42 U.S.C § 3601 (DISCRIMINATION BASED ON SEX)**
2. **VIOLATION OF FEDERAL HOUSING ACT 42 U.S.C. § 3601 (DISCRIMINATION IN EVICTION PROCEEDINGS)**
3. **VIOLATION OF FEDERAL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS 42 U.S.C § 1985**
4. **VIOLATION OF FEDERAL SHERMAN ACT 15 U.S.C. §§ 1-7**
5. **VIOLATION OF FEDERAL CLAYTON ACT 15 U.S.C. §§ 12-27**
6. **VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT, CIVIL CODE, § 51 (DISCRIMINATION BASED ON SEX AND SELF HELP EVICTION)**
7. **VIOLATION OF TOM BANE CALIFORNIA CIVIL RIGHTS ACT CIVIL CALIFORNIA CIVIL CODE § 52.1**
8. **BREACH OF CONTRACT CIVIL CALIFORNIA CIVIL CODE § 1942**
9. **CONSTRUCTIVE EVICTION, CALIFORNIA CIVIL CODE, § 1940.2**
10. **BREACH OF IMPLIED COVENANT OF QUIET ENJOYMENT CALIFORNIA CIVIL CODE, § 1927**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**11. BREACH OF IMPLIED WARRANTY OF HABITABILITY CIVIL CODE §1941.1**
**12. VIOLATION OF CALIFORNIA TENANT PROTECTIONS ACT, CIVIL CODE, § 1947.12 AND § 1946.2**
**13. RETALIATORY ACTIONS, CIVIL CODE, § 1942.5**
**14. ACTUAL FRAUD CALIFORNIA CIVIL CODE, § 3294**
**15. CONSTRUCTIVE FRAUD CALIFORNIA CIVIL CODE, § 1573**
**16. VIOLATION OF CALIFORNIA'S LOCKOUT OF TENANT LAW, CIVIL CODE, § 789.3**
**17. CONVERSION, CALIFORNIA CIVIL CODE CODE, § 3336**
**18. TRESPASS PENAL CODE § 602**
**19. NUISANCE CALIFORNIA CIVIL CODE § 3479**
**20. INVASION OF PRIVACY CALIFORNIA CIVIL CODE § 1708.8**
**21. DEFAMATION CALIFORNIA CIVIL CODE § 44**
**22. SLANDER CALIFORNIA CIVIL CODE § 46**
**23. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CACI 1600**
**24. NEGLIGENCE CALIFORNIA CIVIL CODE § 1714(a),**
**25. NEGLIGENT HIRING, SUPERVISION OR RETENTION OF EMPLOYEE CACI 426,**
**26. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CACI 1620**
**27. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONAL CODE § 17200 *ET SEQ.***
**28. BURGLARY CALIFORNIA PENAL CODE § 459**
**29. FINANCIAL FRAUD CALIFORNIA CIVIL CODE, § 1572**

**DEMAND FOR JURY TRIAL**

---

*Saitta v. Greystar*
Complaint

Plaintiff Laura  Saitta ("Plaintiff") hereby alleges as follows:

The Plaintiff brings this case against Defendants for unconscionable actions against Plaintiff during her apartment residency at One Paseo Village ("One Paseo") from March 26, 2020 to present. These actions include, but is not inclusive of, refusing to remove a broken washer/dryer (W/D) unit blocking access to a second bedroom and greatly limiting intended functional use of more than 50% of apartment; breaking Plaintiff's personal replacement W/D; increasing rent 63% through August 1, 2025, when that rent increases again for a toal of 74% since initial signing; conspiracy of harassment and retaliation; breach of contract; breach of implied warranty of habitability; breach of quiet enjoyment; fraud in retro-charging additional base rent to previous rental months that had already been paid; and negligence.

A complete list of the claims include: Violation of Federal Housing Act (42 U.S.C. § 3601 *et seq*, Discrimination based on sex); Violation of Federal Housing Act (42 U.S.C. § 3601 *et seq*, Discrimination in eviction proceedings); Violation of Federal Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985); Violation of Federal Sherman Act 15 (U.S.C §§ 1-7); Violation of Federal Clayton Act (15 U.S.C. §§ 12-27); Violation of Unruh Civil Rights Act (California Civil Code § 51); Violation of Tom Bane Civil Rights Act (California Civil Code § 52.1); Breach of Contract (California Civil Code § 1942); Constructive Eviction (California Civil Code § 1940.2); Breach of Implied Covenant of Quiet Enjoyment (California Civil Code § 1927); Breach of Implied Warranty of Habitability (California Civil Code § 1941.1); Violation of The Tenant Protection Act (California Civil Code § 1947.12 and § 1946.2); Retalitory Actions (California Civil Code § 1942.5); Actual Fraud (California Civil Code § 3294); Constructive Fraud (California Civil Code § 1573); Violation of California's Lockout of Tenant Law (California Civil Code §789.3); Conversion (California Civil Code § 3336); Trespass (California Penal Code § 602); Nuisance (California Civil Code § 3479); Invasion of Privacy (California Civil Code § 1708.8); Defamation (California Civil Code § 44); Slander (California Civil Code § 46); Intentional Infliction of Emotional Distress (CACI No. 1600); Negligence (California Civil Code § 1714(a)); Negligent Hiring, Supervision, or Retention (CACI No. 426); Negligent Infliction of Emotional Distress (CACI No. 1620); Violation of California Business and Professional Code § 17200 *et seq*; Burglary (California Penal Code § 459); and Financial Fraud

1  (California Civil Code § 1572).

2      For these violations, Plaintiff seeks relief including, but not inclusive of, compensatory and

3  punitive damages, as well as injunctive relief.

4      The Plaintiff hereby demands a jury trial.

5                    **PARTIES, VENUE, & JURISDICTION**

6  1.  Plaintiff was at all times relevant herein an individual residing in the judicial district of San

7      Diego County, California, and is a resident at One Paseo Living apartment property where

8      events occurred.

9  2.  Plaintiff is informed and believes and on that basis alleges that Defendant Kilroy Realty,

10     L.P. ("KILROY") is a California company doing business in this judicial district. KILROY

11     is headquarters in Los Angeles County, California and owns the One Paseo Living apartment

12     property in San Diego, California where events occurred.

13 3.  Plaintiff is informed and believes and on that basis alleges that Defendant Angela Aman

14     ("AMAN") is an individual, the CEO at KILROY, and resides in the Los Angeles County,

15     California area.

16 4.  Plaintiff is informed and believes and on that basis alleges that Defendant John B. Kilroy Jr.

17     ("JOHNJR") is an individual, the former CEO until on or around the end of December 2023

18     and current Chairman at KILROY, and resides in the Los Angeles County, California area.

19 5.  Plaintiff is informed and believes and on that basis alleges that there are multiple Defendants

20     that conduct business in tangent d/b/a as "Greystar" including Greystar Real Estate Partners,

21     LLC, d/b/a "Greystar," a limited liability company that operates as a multi-family rental

22     property owner, developer, and manager with office across the U.S.;  Greystar Management

23     Services, LLC, d/b/a "Greystar," a limited liability company that is a subsidiary and acts as

24     property management for rental properties with activities including advertising, marketing,

25     promoting, offering, and leasing the rental of residential units to consumers in this District;

26     and Greystar California, Inc., d/b/a "Greystar," a corporation that operates as a Greystar

27     subsidiary to contract directly with property owners to manage rental properties within

28     California.

6. These Defendants will be collectively referred to herein as "GREYSTAR." Defendant GREYSTAR is a company doing business in San Diego County, California with headquarters in Charleston County, South Carolina. GREYSTAR manages the property at the One Paseo Living apartment property where events occurred.

7. Plaintiff is informed and believes and on that basis alleges that Defendant Bob Faith ("BFAITH") is an individual, current CEO and Chairman of GREYSTAR, and resides in Charlston County, Charlston, South Carolina area.

8. Plaintiff is informed and believes and on that basis alleges that Defendant Theresa Barr ("TBARR") is an individual, current General Manager for Greystar at One Paseo apartment complex, and resides in the San Diego County, California area.

9. Plaintiff is without knowledge of the true names and capacities of the defendants sued herein as DOES 1 to 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.    Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously-named defendants is responsible in some manner for the occurrence herein alleged and that Plaintiff's damages as herein alleged were proximately caused by such defendants.

10. This Court has original jurisdiction over Plaintiff's claims arising under federal law, specifically Violation of Federal Housing Act 42 U.S.C. § 3601 *et seq.* (Discrimination based on sex), Violation of Federal Housing Act 42 U.S.C. § 3601 *et seq.* (Discrimination based in Eviction Proceedings), Violation of Federal Conspiracy to Interfere with Civil Rights 42 U.S.C. § 1985, Violation of Federal Sherman Act 15 U.S.C. §§ 1-7, and Violation of Federal Clayton Act 15 U.S.C. §§ 12-27.

11. Plaintiff's state law claims are so related to those under which this Court has original jurisdiction that they form part of the same case and controversy. Supplemental jurisdiction is therefore appropriate over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.

12. This court has jurisdiction of Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as Federal Rule of Civil Procedure 65.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims made herein occurred in this Judicial District, and Plaintiff resides in this Judicial District.

14. Plaintiff is informed and believes and on that basis alleges that Defendant KILROY and its leadership team are located in Los Angeles, California within the neighboring U.S. District Court for the Central District of California.

15. Plaintiff is informed and believes and on that basis alleges that Defendant GREYSTAR appears to have at or around four hundred (400) properties currently in California with at or around one hundred nine (109) properties in the San Diego area, and therefore has personal jurisdiction with sufficient minimum contacts to have a connection to San Diego, California for this Court to hear the case.

## INTRODUCTION

16. All allegations of this complaint are made upon information and belief, without prejudice to amendment, supplementation, contradiction, withdrawal, or deletion of any allegations, or Plaintiff's rights to prove the facts at trial after it has been ascertained.

17. Plaintiff avails herself of the doctrine of alternative pleadings and, inasmuch as her investigation is not complete, and discovery and investigation is ongoing, pleads each allegation, cause of action, claim, and remedy in this Complaint without prejudice to any contradictory, current, subsequent or previous allegation, claim or remedy after the true and correct facts have been discovered and pleaded and proven and/or Plaintiff has expressly elected among available alternative remedies. Further, Plaintiff's pleading or omission of any alternative theory, cause of action, or remedy shall not constitute an election of one or more theories, claims, or remedies over, in place of, or to the exclusion of, any other.

18. Plaintiff alleges alternatively that each defendant was the agent, servant, and/or employee of each and every other defendant and in doing the acts herein alleged was acting within the scope and pursuant to such agency and employment at all relevant times.

19. Plaintiff alleges alternatively that each employee defendant approved in advance the actions taken by each other defendant or, after the conduct was undertaken, intentionally and with

full knowledge thereof ratified, approved, or condoned and benefited from the actions of every other defendant, thereby adopting it as their own.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

20. Conduct from ALL Defendants are referenced in the document as **DEFENDANTS' CONDUCT** due to the repeated reference and amount of claims, to aid in simplicity of reading the Complaint.

21. Plaintiff repeats and re-alleges the paragraphs as set forth hereinabove and incorporates by reference all allegations as though fully set forth herein.

22. GREYSTAR holds itself out to provide property management services, among other things, and provides those services to KILROY for the One Paseo apartments located in San Diego, California.

23. Plaintiff signed a lease with One Paseo Living with an effective date of March 26, 2020 and Plaintiff paid pro-rata March rent of $858.58 and $4,436.00 base rent. This was at the beginning of COVID and there were few tenants and few services at the complex, especially in Plaintiff's building. Plaintiff's toilet wasn't flushing properly on the first use by one of the movers. Because of COVID, it was not addressed immediately. An external plumbing company was eventually used, and one of the plumbers used a spear-like rod to pull out a dead rat and placed it into a large brown bag which he took into the hallway outside the apartment.

24. On or about September 2021, the then-current property manager, was transferred to another GREYSTAR location, and created a renewal rate for Plaintiff with a $44.00 /month increase in rent, effective November 1, 2021 set at $4,480. Plaintiff signed that renewal lease after delays from the front office generating it.

25. The Plaintiff paid the rent listed in the One Paseo payment system on November 1, 2021 for $4,436.00. On November 4, 2021, an additional base rent was added for $44.00 but never told Plaintiff that the amount was added. Upon discovery, Plaintiff paid the additional $44.00.

26. Greystar front office staff charged Plaintiff a partial month rent for September 2021 even

though Plaintiff paid partial rent initially in March 2020 when the lease began to ensure rent would be charged monthly going forward. Plaintiff paid on September 2, 2021 which was the stated rate for September in the One Paseo system. One Paseo accepted that payment for that month. The One Paseo payment system is set up to charge rent and expenses on a monthly calendar basis. When Plaintiff asked about the charge Plaintiff was told the rental payment goes off original sign by date, even if a partial payment at that time versus the effective date of the renewal contract.

27. On November 14, 2021, Plaintiff placed a maintenance request in the One Paseo maintenance tracking system for a leak in the washing machine and a leak under the sink. When Plaintiff initially looked at apartments with employee Dan, a leasing agent, he stated everything in the apartment was new, so it seemed odd the machine wasn't under warranty. Employee Jeff from Maintenance arrived on November 15 2021 and fixed the kitchen sink by re-screwing the pipe correctly, but he was not able to fix the washing machine. His supervisor, employee Jorge, also arrived in the unit a few times over the next few weeks but said he had no one with the expertise to install the part needed, even though Jeff stated they had already done several within the complex. During the week of December 13, 2021, employee Jeff arrived with the replacement part but he dropped it almost immediately and it broke. He returned during the later part of the week and disconnected the washing machine and took the washing machine cover off and performed a few tasks including wet vacuuming the appliance and something electrical. The dryer unit was also removed from the W/D closet and was placed directly in front of the second bedroom door to block any entry into Plaintiff's second bedroom. Employee Jeff never returned. Plaintiff spoke with employee Jorge, a supervisor, who told her that he would not replace the broken machine with a new washer and to do her laundry down the street. Employee Adriana from the front office was also involved. Plaintiff told Jorge she would buy her own replacement as more than 30 days had passed without a functioning washer-dryer appliance. Plaintiff bought a new washer/dryer which was delivered and installed on or around December 20, 2021.

28. The broken washer-dryer took up more than 50% of the intended purpose of the apartment

from November 15, 2021 until on or about May 14, 2024, but Employee BARR would not settle for the period in question.

29. Plaintiff sent several messages to One Paseo to pick up the broken machines over the years, but no one showed.

30. Plaintiff asked the front office for the current Property Manager's name or contact information or to have him/her call Plaintiff, but Plaintiff never heard from any property manager until May 2024, despite several property managers holding that position during that time.

31. Eventually maintenance would send notices to enter apartments for other work or to check things. Maintenance would enter and refuse to take the broken units when they left. Over time they would state, "I'll let my manager know."

32. On or about August 2022 the front office notified Plaintiff that maintenance would be entering the apartment. When Plaintiff opened the door, employee Darian and employee David1 were turned talking to employee Jorge who stated, "See if she sold them." David1 and employee Darian entered apartment with an IPAD. The employee Darian asked if anything was wrong and I showed her the broken washer-dryer machine. I believe she took a photo. I believe employee David1 replaced the air filter. Then as the employee Darian went around the corner to stand in front of the washer-dryer closet, employee David1 stopped at the oven and began to push/pull on the right side of the oven handle. Plaintiff asked him what he was doing and he stood upright, looked Plaintiff in the eye, shrugged and smirked. The next time Plaintiff used the oven handle, the right side of the oven handle disconnected from the oven.

33. Plaintiff showed employee David1 and employee Darian the broken toilet and explained what the external plumbers did when they pulled the dead rat out. The employee Darian stated she would let management know. When they left, Plaintiff asked if they were going to remove the broken machines, the employee Darian stated she'd let her management know. No one ever showed to fixed the broken toilet or the oven handle.

34. On or about September 19, 2022 Peter left a notice to enter on Plaintiff's door and an appt

was set up for him to return the next day to check the water meter. The next day, Plaintiff let Peter in and as they walked to the washer-dryer closet Peter said aloud to someone other than Plaintiff, "This is the old washer-dryer and this is the new washer-dryer." He unscrewed a small cover in the washer-dryer closet ceiling. Plaintiff returned to the couch to work. Shortly after, employee Peter left the unit and returned. Shortly after, a strange noise occurred and Plaintiff went over to the washer-dryer area. Employee Peter had opened the spare bathroom door and began to fill an orange Home Depot bucket with water from the bath. Plaintiff explained that he cannot just open any door in the unit, and then walked to the water meter. He pointed to a piece of paper and said, "No. no.no." Plaintiff asked, "What's that smell? It smells like stale water." Employee Peter shrugged his shoulders and left. Plaintiff woke up about 4:00am that night with a headache and there was smell from the washer-dryer closet. The washer-dryer had been moved inside the closet and it looked like the waste exit pipe was now exposed from the drainage hole. Plaintiff had no access to the maintenance reporting system as it would not allow her to log into the system. Plaintiff sent an email instead. The next day Plaintiff saw employee Peter in the hallway and asked what he did. Peter looked at the floor and would not respond. The waste exit pipe remains exposed as of this filing. Plaintiff covered the washer-dryer closet door with plastic garbage bags and tape in an attempt to keep the smells out of the apartment. Again, no response from the front office or maintenance. Plaintiff remembers employee Jeff told her that "they do everything, but the water meter" as "we can't touch that." Jeff was re-located, presumably to another GREYSTAR managed complex. Employees re-locate all the time seemingly to other GREYSTAR locations. If something goes wrong, the person gets transferred to another location. After mentioning to an employee that enters the apartment someone's name that was part ongoing issues, they typically say, "they're not here anymore." Plaintiff could not even get an employee to give her the property manager's name for escalation.

35. On or about September 13, 2022 Plaintiff's rent was increased as a charge appeared in the system which eventually turned out to be "a building loss protection fee." Plaintiff initially auto-paid the rental bill but ceased doing so after she noticed this charge that the front office

had never disclosed to Plaintiff prior. This monthly charge was also charged on October 11, 2022, November 11, 2022 and December 6, 2022. On January 2, 2023, a credit for $60.00 appeared from the front office for $60.00. The December's charge follows several emails and phone calls, and the timing difference with the other three months suggests an accelerated application of the charge for December.

36. On December 1, 2022, the front office raised rent again to $4,926.00, a $446.00 rent increase.

37. On or about May 13, 2024, Fire inspectors came with a GREYSTAR employee to enter without notice, apparently because there was nothing in the paperwork on inspection in the second bedroom. Plaintiff opened the door and said, "it's blocked." The fire inspector repeated, "it's blocked" as he walked away. That inspector was only looking to view the second bedroom and not the washer-dryer room. Shortly after, employee TBARR and employee Christoph visited Plaintiff's apartment and saw the washer-dryer out in the open. During our discussion, they stated it was an emergency for them to get into the taped shut washer-dryer room to ensure there was no leak from the sprinkler. Plaintiff explained she was preserving evidence and eventually allowed employee Christoph to peak in the right side of the washer-dryer closet so he could look at the fire sprinkler, requiring to peel off the sealed tape for the toxic smells. He was told not to touch anything. After further discussion about the washer-dryer, two men (employees) stormed through the front door unexpectedly, without knocking, and started removing the broken washer-dryer appliance unit. Plaintiff had all four people sign in. Plaintiff announced she would record with her phone " so there is no dispute on when this was removed." Plaintiff made an appointment with Chirstoph for him to return the next morning at 9:00am with the fire inspector, but no one showed or called. Neither did Theresa when I emailed her that "No one showed. No one called."

38. On or about March 1, 2024, Plaintiff paid $4,926 for base rent on a MTM lease, so Plaintiff had paid for the monthly term already. Employee BARR raised rent mid-month to $5,413.00, a $487 increase per month. On March 15, 2024, there was a base rent increase of $267.06 which is the pro-rated mid-month increase, and front office employees refused

repeated explanations that they cannot change the rent rate mid-month, especially on a MTM term as every month is the term period. In addition, employee Emerson (email was Emerson J) would not provide me with the property managers name or email or the formula used to calculate that rent, and apparently failed to escalate per Plaintiff request.

39. On or around January 14, 2025, Plaintiff reached out to CEO AMAN, as landlord, but she never responded to Plaintiff and new issues have continued. This email included a photo of the broken washer/dryer unit blocking entry to Plaintiff's second bedroom and the other in the main living area. It also included several critical emails to support egregious and unconscionable ongoing issues Plaintiff faced at KILROY's One Paseo property, and the need for an escalation to the CEO level for assistance in resolution. She failed to respond to Plaintiff within 30 days to correct the issue, and she has continued to fail to respond as of filing.

40. The payment system for March and April of 2025 listed $4,926.00 as the base rate which Plaintiff paid in full respectively. After April rent payment, the front office added two more base rates of $1,822.00 each and retro-posted it as April 2, 2025, for a post-payment rental increase for March 2025 and April 2025, for a net increase of $3,644.00. This is an action of financial fraud.

41. As of April 2, 2025, the rates had not raised in the payment system. Plaintiff paid the rate in the system and received confirmation. Later in the day, employee BARR changed, or had another employee change, the pricing in the system for the monthly rate and also posted an increase to be back paid for the previous two months.

42. On April 4, 2025, a new notice for increase rent was posted to the Plaintiff's door, increasing for the month to month (MTM) rate this time set at $7700/month. This will represent a 74% base rent increase since initial signing at One Paseo on March 26, 2020.

43. On or around April 7, 2025, employee BARR left a "notice to pay or quit document" on Plaintiff's door. This was false and Plaintiff sent a note stating she was waiting for the delivery of the court documents, which never arrived.  Plaintiff had already paid rent according to the amount stated per the One Paseo payment system rent on April 2, 2025,

prior to employee BARR changing the rate in the system. Employee BARR then posted an additional $1,822.00 for March 2025 and $1,822.00 for April 2025 which were back-dated to their respective month. Those charges were restated again in the One Paseo payment system as charges for May 2025 and were posted for a net monthly rent for May of $10,984.57. The One Paseo payment system only allows for the payment amount posted by One Paseo and there was no way to pay the rent absent the back-dated erroneous charges. Plaintiff sent a note to employee BARR stating that the back-dated charges were illegal, and paid the full amount with a note stating that those charges would be disputed.

44. For the May 2, 2025 payment, including base rate, the two $1,822 payment applied post payment for March and April, as well as associated rent expenses and credit card payment fees, were consolidated into May for a net payment $11,308.61. The credit card charge is 2.9%, which for the retro-charging action, generated a $324.04 charge.

45. The higher this rent reaches, the higher the percentage of payment with a credit card are for proof of payment and dates incurred by Plaintiff, which are required given all of the issues from ALL Defendants.

46. Additional Defendants' actions are summarized herein. Greystar employees consistently rented the apartment below Plaintiff's, or allowed it to be used as part of an Airbnb program, to smokers (cigarette, pot, vaping) and failed to prevent smoking of those tenants over five (5) year period despite One Paseo being listed as a smoke-free complex (inside and out); tampered/broke Plaintiff's purchased washer/dryer unit; broke oven handle right in front of Plaintiff; failed to report or cure issues identified during in-person apartment visits; intentionally called a visit "emergency" so they could gain access without proper notification; Not one Property Manager, or employee in a "property manager-like" position, from October 2021 until May 2024 ever responded to Plaintiff's issues, and the One Paseo front office even refused to provide the property manager's name and direct contact information; The employees that Plaintiff identified in emails by name as being active in the issue were moved to another location or promoted.

///

# FIRST CAUSE OF ACTION

## VIOLATION OF FEDERAL HOUSING ACT

### 42 .S.C § 3601 *et seq.*

47. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

48. GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

49. The Federal Housing Act 42 U.S.C. § 3601 *et seq.* prohibits discrimination by direct providers of housing, including landlords and real estate companies, whose discriminatory practices make housing unavailable to persons because of race, religion, sex, national origin, familial status, or disability. This includes the pattern or practice of discrimination where there is force or threat of force used to deny or interfere with housing rights.

50. The Federal Housing Act 42 U.S.C. § 3601 *et seq.* makes it unlawful to discriminate in housing or housing related services on the basis of sex and familial status, which are protected classes. The scope of protection extends to all aspects of housing, including renting. This includes making housing related services unavailable on sex,

51. The term "sex" expressly includes discrimination based on gender.

52. Defendants have discriminated against Plaintiff, a woman, through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

53. ALL **DEFENDANTS' CONDUCT** was a substantial factor in causing Plaintiff's discrimination as a woman for housing services and is a violation of rights under The Fair Housing Act.

54. Plaintiff seeks all available damages. Declaratory and injunctive relief are sought to compel ALL Defendants to prevent irreparable harm to the Plaintiff, and establish legal rights under discrimination laws.

### SECOND CAUSE OF ACTION

### VIOLATION OF FEDERAL HOUSING ACT 42 U.S.C. § 3601 *et seq.*

### (Discrimination Based on Eviction Proceedings)

55. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

56. GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

57. Violation of Federal Housing Act 42 U.S.C. § 3601 *et seq.* occurs when Defendants use eviction proceedings to discriminate against someone based on their protected class (race, color, sex, national origin, familial status, or disability)

58. The Federal Housing Act 42 U.S.C. § 3601 *et seq.* also protects against discriminatory practices in the process of evicting tenants. This means the Defendant cannot use the threat of eviction or actually evict someone based on their protected class.

59. Defendants have discriminated against Plaintiff, through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

60. Specifically, employee BARR sent Plaintiff an erroneous "notice to pay rent or quit" on or about April 7, 2025. Plaintiff sent multiple emails during the course of April 2025 stating that she was awaiting the proper court documents, but employee BARR never sent and apparently did not actually file the eviction notice in the court.

61. Plaintiff had already paid rent according to the amount stated per the One Paseo payment system rent on or about April 2, 2025, prior to employee BARR changing the rate in the system. Employee BARR change the rate in the system for April 2025 rent after Plaintiff paid the rent. BARR then posted an additional $1,822.00 for March 2025 and $1,822.00 for April 2025 which were back-dated to their respective month. Those charges were restated again in the One Paseo payment system as charges for May 2025 and were posted for a net

monthly rent for May of $10,984.57. The One Paseo payment system only allows for the payment amount posted by One Paseo and there was no way to pay the rent absent the back-dated erroneous charges. Plaintiff paid the full amount.

62. Plaintiff sent a note to employee BARR stating that the back-dated charges were illegal. There was no response at time of filing.

63. ALL **DEFENDANTS' CONDUCT** was a substantial factor in causing Plaintiff's discrimination base eviction proceeding for housing services and is a violation of rights under The Fair Housing Act.

64. Plaintiff seeks all available damages. Declaratory and injunctive relief are sought to compel ALL Defendants to prevent irreparable harm to the Plaintiff, and establish legal rights under discrimination laws.

## THIRD CAUSE OF ACTION

## VIOLATION OF FEDERAL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

### 42 U.S.C § 1985

65. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

66. GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of employment.

67. The Federal Conspiracy to Interfere with Civil Rights, 42 U.S.C. §1985(2), states that "two or more persons will be considered to have conspired to impede, hinder, obstruct, or defeat, the due course of justice if such person conspires to deny any citizen the equal protection of the laws, or injure his/her or his/her property for lawfully enforcing the right of any person, or class of persons, to the equal protection of the laws.

68. Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

69. **DEFENDANTS' CONDUCT** did not just happen one time. The conduct occurred with almost every single interaction from a Greystar employee since October 2021. This is a conspiracy that all of the relevant One Paseo employees knew about and their actions were in furtherance of that conspiracy. Not one of the Property Mangers responding to Plaintiff's pleas for assistance from October 2021 until May 2025, and minimally after that. The only exception occurred on April 26, 2025 from front office employee Brandon when he brought to Plaintiff's apartment an FOB key when Plaintiff was locked out.

70. ALL **DEFENDANTS' CONDUCT** was a substantial factor in the conspiracy against the Plaintiff's and each action was in furtherance of that conspiracy.

71. Federal law 42 U.S.C § 1985 grants a civil cause action for damages caused by conspiracies aimed at injuring a person in his/her person or property, or denying him/her Federal right or privilege. Plaintiff is entitled to payment of penalties according to proof, interests, attorney fees, and costs as permitted by statute.

72. Plaintiff seeks all available damages.  Declaratory and injunctive relief are sought to compel ALL Defendants to prevent irreparable harm to the Plaintiff, and establish legal rights under civil rights laws.

///

///

## FOURTH CAUSE OF ACTION

### VIOLATION OF FEDERAL SHERMAN ACT 15 U.S.C. §§ 1-7

73. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

74. GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

75. Defendants  have  discriminated  against  Plaintiff  through  chronic  and  systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at

the One Paseo apartment complex. The Sherman Act prohibits anticompetitive and unfair business practices, including monopolies, conspiracies, and restraint of trade. Price fixing agreements, market allocation agreements, and attempts to monopolize markets are examples of violations of the Sherman Act.

76. The Sherman Act prohibits both price fixing and market allocation agreements among apartment owners, making them illegal under federal law.

77. These practices are considered "per se" violations, meaning they are automatically unlawful regardless of any potential justifications and no further justification or economic analysis is allowed.

78. Price fixing involves an agreement by two or more competing producers of a specific commodity, or competing providers of a particular service, in a defines geographic area, to raise, set, or maintain prices for their goods or service. It also includes when owners tamper with prices or terms and conditions of lease contract. It usually involves most of the competitors in the market. The Sherman Act explicitly prohibits agreements to fix prices, regardless of whether agreed upon prices are reasonable or not.

79. Employee BARR at One Paseo has increased Plaintiff's rent from $4,436.00 in April 2020 to $7,334.84 in May 2025. The standard rate per the renewal letter was on or about $4,614.00 in May 2025. Plaintiff currently pays an extraordinary rate. Plaintiff's rate is based on MTM, but it is highly inappropriate for Plaintiff to sign a MTM lease with all of the outstanding and ongoing issues. Employee BARR sent another rate increase notice on or about April 4, 2025 for $7,766.00 effective August 1, 2025. These increases are unconscionable.

80. Market Allocation involves competitors dividing a market into distinct geographical areas or customer segments, preventing them from competing fairly. The Sherman Act prohibits any contract or combination that unreasonably restrains trade, and market allocation agreements clearly fall under this prohibition.

81. In the apartment context, this could mean apartment owners agreeing to only rent out apartments in specific neighborhoods, or to target specific types of renters (e.g families or students or millennials).

82. Plaintiff is informed and believes and on that basis alleges that the management company, Greystar, creates a merger-like presence across the area which allows the aggregate of property owners that utilize Greystar as a property management company to function in a monopolistic manner for the various property owners. The management company handles the day to day activities as landlord (e.g. pricing, marketing, locations, markets served). Since they are managing so many other apartment complexes in their market, it allows for price fixing across multiple property owners. For the purposes of this claim of Defendant Greystar, the California properties have a market allocation for large cities, primarily San Diego, Los Angeles, San Francisco, Inland Empire, and Orange County.

83. Plaintiff is informed and believes and on that basis alleges that Defendant Greystar violates through market allocation by serving as the managing intermediary for the various apartment owners and appears to have at or around four hundred (400) properties currently in California with at or around one hundred nine (109) properties in the San Diego area. This arrangement circumvents The Sherman Act's primary aim to ensure fair competition in the marketplace and allows for anticompetitive practices including monopolies, conspiracies, and restraint of trade which is a violation of The Sherman Act.

84. Plaintiff is informed and believes and on that basis alleges that Defendant Greystar, and its employees, and Defendant Kilroy Realty, and its employees, are engaged in "per se" violations of The Sherman Act. These violations restrict Plaintiff's ability to find comparable and competitive property that is not managed by Greystar, or that has a similar monopolistic structure, in the San Diego area.

85. ALL **DEFENDANTS' CONDUCT** was a substantial factor in the competitive and unfair business practices against the Plaintiff.

86. Defendants might argue that the rental rate is high because Plaintiff is on a Month-to-month (MTM) term. Plaintiff has been with the One Paseo Village apartments for five (5) years and signed two (2) separate term leases. In the weeks following the second signing, Greystar employees at One Paseo location exhibited a dramatic shift in customer service, level of support and response, and overall professionalism.

87. The second term agreement was effective November 1, 2021. Greystar charged a partial month increase for September 2021 even thought that month was paid in full at the old rate, as Greystar goes back to original sign date even if a prop-rated amount was paid on the first partial month initially. The payment system is on calendar month.

88. Then, on November 15, 2021, Jeff from maintenance attempted to fix a broken washing machine and dropped the part and broke the washing machine. After that, maintenance and the front office collectively blamed Plaintiff, and began a series a retaliatory actions that continue to present day. As a result, it would not have been appropriate for Plaintiff to sign a new lease while Breach of Contract issues failed to be fixed and new issues continued to arise.

89. Plaintiff is informed and believes and on that basis alleges that Kilroy Realty may only utilize Greystar as a management company for the One Paseo Property. Kilroy Realty appears to own at or around forty-eight (48) properties in California, yet appears to utilize Greystar for only one (1) of those properties. One Paseo is the location where the events occurred. With that said, any data or insight obtained from that one site, such as price points in a major markets or contract terms and conditions, can be extrapolated for use in Kilroy's other properties. The same could be said for any property owner utilizing GREYSTAR.

90. Violation of the Sherman Act from Greystar as a management company of One Paseo, and Kilroy Realty and owner of One Paseo has led to "per se" unfair and anti-competitive price tampering of prices or terms and conditions of contract, or to set price levels at a certain levels against the Plaintiff.

91. Plaintiff seeks all available damages, including treble damages where applicable.

## FIFTH CAUSE OF ACTION

## VIOLATION OF FEDERAL CLAYTON ACT 15 U.S.C. §§ 12-27

92. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

93. GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in

the wrongdoing, as   under principle of respondeat superior   where an employer is responsible for the actions of its employees within the scope of their employment.

94. Defendants   have   discriminated   against   Plaintiff   through   chronic   and   systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

95. The Clayton Act builds upon the Sherman Act and prevents anti-competitive practices such as price discrimination, exclusive dealing agreements, and mergers that could lead to monopolies. It essentially aims to prevent businesses from using their power to stifle competition and harm customers. The Act can be relevant in the  context of apartment rental pricing and practices.

96. The Clayton Act  targets practices like tying arrangements, predatory pricing, and mergers that could lessen competition. In the apartment rental context,  this could mean preventing landlords from requiring tenants to purchase unnecessary services or manipulating prices to drive competitors out of the market.

97. It also addresses mergers and acquistions that could lead to market dominance and reduced competition. This includes when apartment owners merge, potentially leading to fewer choices and higher prices that could be subject to review under the Clayton Act.

98. GREYSTAR manages properties across companies in a given market so instead of having apartment companies formally merge, they consolidate under a single property management company with the same effect of an actual merger in terms of few choices and higher prices for consumers. In addition, the staff has high turnover and the Greystar company just keeps moving them around when a tenant issue arises. If there is an issue with an employee, they just transfer that individual off to another property and never address the issue at hand. A tenant has few choices in a city like San Diego.

99. Plaintiff is informed and believes and on that basis alleges that Defendant Greystar appears to have at or around four hundred (400) properties currently in California with at or around one hundred nine (109) properties in the San Diego area, and therefore has a significant presence in the San Diego, California market. This can cause a merger-like scenario that the

1    Clayton Act is intended to prevent.

2    100.    The overall goal is to protect consumers from unfair or deceptive practices that could

3    lead to higher prices or reduced choices. In the case of apartments, this includes ensuring

4    competitive pricing and preventing unfair rental practices.

5    101.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the competitive and

6    unfair business practices against the Plaintiff.

7    102.    Plaintiff seeks all available damages, including treble damages where applicable.

8    **SIXTH CAUSE OF ACTION**

9    **VIOLATION OF CALIFORNIA'S UNRUH CIVIL RIGHTS ACT,**

10    **CIVIL CODE, § 51 (Discrimination Based on Sex and Self-Help Eviction)**

11    103.    Plaintiff incorporates by reference each and every allegation in the foregoing

12    paragraphs of this Complaint.

13    104.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through

14    vicarious liability for actions of their employees, even if they were not directly involved in

15    the wrongdoing, as   under principle of respondeat superior   where an employer is

16    responsible for the actions of its employees within the scope of their employment.

17    105.    The Unruh Civil Rights Act, part of California Civil Code § 51(b) states that "All

18    persons within the jurisdiction of this state are free and equal, and no matter what their sex,

19    race, color, religion . . . are entitled to the full and equal accommodations, advantages,

20    facilities, privileges, or services in all business establishments of every kind whatsoever.

21    106.    The term "sex" expressly includes discrimination based on gender.

22    107.    Defendants have discriminated against Plaintiff, through chronic and systemic

23    **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at

24    the One Paseo apartment complex.

25    108.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the conspiracy against

26    the Plaintiff's and each action was in furtherance of that conspiracy.

27    109.    Plaintiff seeks all available damages.

28    **SEVENTH CAUSE OF ACTION**

**VIOLATION OF TOM BANE CALIFORNIA CIVIL RIGHTS ACT**

**CALIFORNIA CIVIL CODE § 52.1**

110.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

111.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as   under principle of respondeat superior   where an employer is responsible for the actions of its employees within the scope of their employment.

112.    The Tom Bane Civil Rights Act prohibits interfering with a person's constitutional or statutory rights through threats, intimidation, coercion, or violence to interfere with these rights without regard to whether the victim is a member of a protected class.

113.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

114.    Action by employee BARR included threats, intimidation and coercion to interfere with Plaintiff's rights under The Tom Bane Civil Rights Act. Employee BARR sent Plaintiff an erroneous "notice to pay rent or quit" on or about April 7, 2025. Plaintiff sent multiple emails during the course of April 2025 stating that she was awaiting the proper court documents, but employee BARR never sent and apparently did not actually file the eviction notice in the court.

115.    Plaintiff had already paid rent according to the amount stated per the One Paseo payment system rent on or about April 2, 2025, prior to employee BARR changing the rate in the system. Employee BARR change the rate in the system for April 2025 rent after Plaintiff paid the rent. BARR then posted an additional $1,822.00 for March 2025 and $1,822.00 for April 2025 which were back-dated to their respective month. Those charges were restated again in the One Paseo payment system as charges for May 2025 and were posted for a net monthly rent for May of $10,984.57. The One Paseo payment system only allows for the payment amount posted by One Paseo and there was no way to pay the rent

absent the back-dated erroneous charges. Plaintiff paid the full amount.

116.    Plaintiff sent a note to employee BARR stating that the back-dated charges were illegal. There was no response at time of filing.

117.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in causing Plaintiff's discrimination as a woman for housing services and is a violation of rights under The Tom Bane Civil Rights Act.

118.    Plaintiff seeks all available damages, including actual damages, statutory damages, exemplary damages, attorney fees, and injunctive relief.

## EIGHTH CAUSE OF ACTION

## BREACH OF CONTRACT, CALIFORNIA CIVIL CODE § 1942

119.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

120.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

121.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

122.    In one example, Employee BARR at One Paseo has increased Plaintiff's rent from $4,436.00 in April 2020 to $7,334.84 in May 2025. The standard rate per the renewal letter was on or about $4,614.00 in May 2025. Plaintiff currently pays an extraordinary rate. Plaintiff's rate is based on MTM, but it is highly inappropriate for Plaintiff to sign a MTM lease with all of the outstanding and ongoing issues. Employee BARR sent another rate increase notice on or about April 4, 2025 for $7,766.00 effective August 1, 2025. These increases are unconscionable.

123.    With regard to the failure of GREYSTAR to repair/replace the broken washer-dryer appliance from 2021, the One Paseo maintenance group had 30 days repair after which they

did not, and then accused Plaintiff of not having permission to replace with a personal machine since employee/supervisor Jorge informed Plaintiff he would replace with a new machine and to do her laundry down the street.

124.    California Civil Code § 1942(b) states that "if a tenant acts to repair and deduct after the 30th day following notice, he is presumed to have acted after a reasonable time. The presumption established by this subdivision is a rebuttable presumption affecting the burden of producing evidence and shall not be construed to prevent a tenant from repairing or deducting after a shorter notice if all the circumstances require shorter notice."

125.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the breach of contract against the Plaintiff's and each action was in furtherance of that breach.

126.    Plaintiff seeks all available damages. The damage should include an amount that will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

127.    Declaratory and injunctive relief is sought to compel ALL Defendants to fulfill their contractual obligations, to enforce equitable servitudes, and to prevent irreparable harm to the Plaintiff.

## NINTH CAUSE OF ACTION

## CONSTRUCTIVE EVICTION,

## CALIFORNIA CIVIL CODE, § 1940.2

128.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

129.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.\

130.    Constructive eviction occurs when a landlord's actions make a rental property so uninhabitable or interfere so severely with a tenant's use and enjoyment of the property that a reasonable person would be forced to leave. Examples that constitute constructive eviction

include neglecting to make necessary repairs that make the property unsafe or uncomfortable, or threatening a tenant or creating a hostile environment.

131.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

132.    California Civil Code § 1940.2 makes it unlawful for a landlord to engage in any acts of grand theft valued over $950.00 that violates California Penal Code§ 484(a) the following for the purpose of influencing a tenant to vacate a dwelling.

133.    Employee Peter can entrance to Plaintiff's apartment under the auspices of working on the water meter. He exceeds that scope when he tampered with Plaintiff's personal washer-dryer machine. He essentially "took" Plaintiff's possession of that property away and without owner's consent to do so and with the intent to deprive the owner of it, and moved the property. He moved the property so that the exit hose would no long drain into the drain, but drain into the apartment in order to cause a flood.

134.    This employee effort was intentional and pre-meditated which is shown from the front office addition of their own insurance to the apartment earlier that month without telling Plaintiff. Had they asked or responded to emails or phone calls from Plaintiff, they would have discovered Plaintiff already owned rental insurance. In doing do, the front office added that insurance monthly charge to the monthly bill without informing Plaintiff and it took Plaintiff's persistence until the end of December to receive a refund.

135.    Under California Civil Code 1940.2(3), "Use, or threaten to use, force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises in violation of section 1927 that would create an apprehension of harm in a reasonable person. Nothing in this paragraph requires a tenant to be actively or constructively evicted in order to obtain relief."

136.    GREYSTAR's damage to that washer-dryer appliance made the property uninhabitable or significantly interfering with the tenant's quiet enjoyment. The condition was so severe as more than 50% of the apartment was impacted as to its intended purpose. A reasonable

person would not be able to continue living in that property. It was the landlord's failure to fulfill their obligations under the lease agreement or state laws that breached the contract.

137.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

138.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the constructive eviction against the Plaintiff's and each action was in furtherance of the violation.

139.    Plaintiff seeks all available damages. While damages state that the amount is not to exceed two thousand dollars ($2,000) for each violation, Plaintiff would argue that each day the contract was breach constitutes a new violation.

## TENTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF QUIET ENJOYMENT

### CALIFORNIA CIVIL CODE, § 1927

140.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

141.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

142.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

143.    California Civil § 1927 states, "If within a reasonable time after written or oral notice to the landlord or his agent of dilapidations rendering the premises untenetable which the landlord ought to repair, the landlord neglects to do so, the tenant may repair the same himself where the cost of such repair does not require an additional expenditure more than one month's rent of the premises and deduct the expenses of such repairs from the rent when due."

144.    Plaintiff is guaranteed quiet enjoyment and has the right to undisturbed use and possession of the property without interference from the landlord or other parties, especially when the interference is significant enough to substantially affect the use and enjoyment of the property. This includes entering the property without notice, failing to address serious safety issues, or failing to prevent disruptive noise and smells from other tenants can be considered a breach.

145.    Plaintiff failed to have quiet enjoyment with the constant harassment from One Paseo employees, ranging from broker washer-dryer machine (2), nonstop smoking (cigaraette, pot, vaping) from the tenant below Plaintiff, the second bathroom in disperair for most of Plaintiff's residency, and constant rate increases. The inability to locate property managers to remedy the issues was a constant concern for Plaintiff.

146.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the breach of quiet enjoyment against the Plaintiff's and each action was in furtherance of the violation.

147.    Plaintiff seeks all available damages, including treble damages where applicable.

///

## ELEVENTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF HABITABILITY

### CIVIL CODE § 1941.1

148.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

149.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

150.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

151.    The Implied Warranty of Habitability implicitly warrants that the leased premises is

suitable for living and will be maintained in a habitable condition throughout the lease term,

152.     The Implied Warranty of Habitability that a property is deemed uninhabitable if it lacks certain essential features or is not maintained according to established standards. A dwelling is considered untenable if it substantially lacks any of the several characteristics, and expressly includes working plumbing and landlord's repair responsibility.

153.     If a landlord provides you with an appliance, then they accept responsibility regarding the maintenance and operation of that machine, including major repairs and replacement.

154.     An unsafe condition can be presents if a broken appliance creates a safety issue. The landlord has a duty to address it promptly.

155.     If a landlord is responsible for supplying an appliance, included in the lease, they must fix or replace it if it breaks

156.     With GREYSTAR leaving a broken washer-dryer appliance for more than 30 days, they punished the tenant to pay for a new washer-dryer in its place. When the employees further punished Plaintiff for exercising her right under the guise of "permissions," they added intimidation and coercion to the list of violations. When they entered the property and refused to remove it, the violations continued. Leaving the washer-dryer created a substantial reduction in habitability as more than 50% of the apartment was not useable for its intended purpose.

157.     In addition, GREYSTAR employee David1 also broke the handle on the oven right in the front of Plaintiff. This caused difficulty in cooking with the oven and the Plaintiff uses the oven every day.

158.     ALL **DEFENDANTS' CONDUCT** was a substantial factor in the violation of the implied warranty of habitability against the Plaintiff's and each action was in furtherance of that violation.

159.     Plaintiff seeks all available damages.

## <u>TWELFTH CAUSE OF ACTION</u>

## VIOLATION OF TENANT PROTECTIONS ACT,

### CIVIL CODE, § 1947.12

160.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

161.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as   under principle of respondeat superior   where an employer is responsible for the actions of its employees within the scope of their employment.

162.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

163.    The California Tenant Protection Act, Civil Code § 1947.12  provides tenants with key protections regarding rent increases and evictions. It limits annual rent increases and requires landlords to have "just cause" to terminate a tenancy after a tenant has occupied the property for 12 months.

164.    One of those key provisions is rent increase caps in that landlords cannot increase rent by more than 5% plus the local Consumer Price Index (CPI) or 10%, whichever is lower, annually. Also, for tenancy over twelve (12) months there is a "just cause" requirement.

165.    Employee BARR's effort to continually increase rent, especially in short months, demonstrates how aggressively Employee BARR was trying to create "cause" to evict Plaintiff.  These increases are unconscionable.

166.    The current Tenant Protections Act exempts properties built within the last 15 years, which would exclude One Paseo. The intent of the law should be to ensure that the people of California are protected from the exact behavior that is being demonstrating here. Allowing a carve-out for the amount of time that an apartment is in existence, gives unreasonable and unfair dominance in the market.

167.    All tenants should be allowed protections against unreasonable landlord actions that clearly violate the Tenant Protections Act in an outrageous manner. California lawmakers

have a duty to be inclusive for all California's citizens in protective legal measures, and they have breached their duty with this carve-out.

168. ALL **DEFENDANTS' CONDUCT** was a substantial factor in the violation of the Tenant Protections Act against the Plaintiff's and each action was in furtherance of that violation.

169. Plaintiff seeks all available damages. Owners may be liable for treble damages if they violate the Tenant Protection Act. This cause of action demonstrated that all landlords should be penalized for the egregious and outrageous actions against tenants.

## THIRTEENTH CAUSE OF ACTION

### RETALITORY ACTIONS,

### CIVIL CODE,  § 1942.5

170. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

171. GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

172. Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

173. California Civil Code 1942.5(d) states that "it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the pupose of retaliating against the lessee . . . has lawfully and peaceably exercised any rights under the law."

174. Evidence will show that Plaintiff spent several years attempting to cure issues with GREYSTAR, and in January 2025 engaged KILROY though CEO AMAN unsuccessfully.

175. ALL **DEFENDANTS' CONDUCT** was a substantial factor in the violation through retaliatory actions against the Plaintiff's and each action was in furtherance of that violation.

176.    Plaintiff seeks all available damages. Damages should include actual and punitive damages, as well as attorney fees.

### FOURTEENTH CAUSE OF ACTION

### ACTUAL FRAUD

### CALIFORNIA CIVIL CODE,  § 3294

177.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

178.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

179.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

180.    According to California Code § 3294, alleging fraud or mistake,  a party must state with particularity the circumstances constituting fraud or mistake.

181.    Actual fraud requires a false statement, knowledge of its falsity, intent to induce reliance, justifiable reliance, and damages. Requires intentional misrepresentation.

182.    Employee BARR made false statements about Plaintiff's rent being late and sent Plaintiff a "Notice to pay rent or quit" on April 7, 2025 which she refused to follow up with a court document.  The rent was paid on time and employee BARR change the rate in the system after payment was made. She also back-charged for the months of March and April 2025.

183.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the Defendants' actual against the Plaintiff's and each action was in furtherance of that violation.

184.    Plaintiff seeks all available damages. Damages should include treble damages where applicable.

### FIFTEENTH CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

## CALIFORNIA CIVIL CODE, § 1573

185.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

186.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

187.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

188.    California Civil Code § 1573 stated that "in any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice"

189.    The code specifically includes "in any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

190.    ALL Defendants' have a duty to act in a way that a person of reasonable care could act without misleading another party. They breach this duty when they mislead the Plaintiff. Their action or omission results in fault benefitting or gaining an advantage, such as increased rent or applying partial month rent incorrectly. The breach of their duty causes the Plaintiff to be misled or deceived of misinformed, such as providing tenants with incorrect information. The Plaintiff is prejudiced and suffers a disadvantage or harm as a result of the deception, such as increased money paid to One Paseo.

191.    ALL .DEFENDANTS'. CONDUCT was a substantial factor in the Defendants' constructive fraud the Plaintiff's and each action was in furtherance of that violation.

192.    Plaintiff seeks all available damages. Damages should include treble damages where applicable.

## SIXTEENTH CAUSE OF ACTION

**LOCKOUT OF TENANT,**

**CIVIL CODE, § 789.3**

193.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

194.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

195.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

196.    California Code § 789.3(b) states that "A landlord shall not, with intent to terminate the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as her residence, willfully"  and § 789.3(b)(1) to "prevent the tenant from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device."

197.    Plaintiff was locked out of her apartment on April 26, 2025. Employee Brandon did bring her a new FOB key and open the door. However, there was mention that the FOB key was set to be active for 1,000 days and Plaintiff has been at the One Paseo apartment for over 1,000 days. The timing of April 26th in conjunction with unfounded eviction issues from employee BARR brings that 1,000 days into question.

198.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the lockout of tenant against the Plaintiff's and each action was in furtherance of that violation.

199.    Plaintiff. seeks all available damages, including actual damages, an amount not to exceed one hundred dollars ($100) for each day or part thereof the landlord remains in violation of this section.

**SEVENTEENTH CAUSE OF ACTION**

## CONVERSION, CALIFORNIA PENAL CODE, § 496 (EXCEEDS $950)

200.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

201.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

202.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

203.    The conversion theft falls criminally under California Penal Code, § 496 (exceeds $950) arises when someone intentionally and substantially interferes with another person's personal property without permission.

204.    The civil claim of conversion civil code § 3336 is used in situations where someone has unlawfully taken or interfered with another's property, similar to criminal theft, to award monetary damages for the wrongful interference with their property.

205.    Employee Peter intentionally and substantially interfered with Plaintiff's personal property, the new washer-dryer, without permission. Peter violated Plaintiff's rights through conversion.

206.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the conversion the Plaintiff's and each action was in furtherance of that conversion.

207.    Plaintiff seeks all available damages, including fair market value of the property, special damages and compensation for the time and money spent pursuing the claim.

## EIGHTEENTH CAUSE OF ACTION

## TRESPASS, PENAL CODE § 602

208.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

209.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through

vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

210.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

211.    California § 602(k) in California makes it illegal to enter land "for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of the land, the owner's agent, or the person in lawful possession."

212.    While a person may initially have consent to enter property, they can exceed the scope of consent by specifically "exceeding the purpose of entry" and "engage in other activities without permission", that may exceed the scope of consent,

213.    Employee Peter exceeded the scope of consent when he tampered with Plaintiff's washer-dryer appliance rendering the appliance unusable. Once he exceeded the scope of consent, then he became a trespasser.

214.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the Defendants' trespass against the Plaintiff's and each action was in furtherance of that violation.

215.    Plaintiff seeks all available damages.

## NINETEENTH CAUSE OF ACTION

### NUISANCE, CALIFORNIA CIVIL CODE § 3479

216.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

217.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

218.    Defendants have discriminated against Plaintiff through chronic and systemic

**DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

219.    Nuisance includes anything that obstructs the free use of property, interferes with comfortable enjoyment of life or property, or is injurious to health, indecent or offensive to the senses.

220.    Nuisance includes Plaintiff's issues concerning offensive odors and other disturbances, especially smoke (cigarette, pot, vaping) in a supposedly non-smoking building or complex. This also covers conditions that pose a threat to public health which includes smoke and the exposed washer-dryer waste pipe.

221.    One Paseo is a smoke-free complex, inside and out, and the employees continued to place smokers (cigarette, pot, vaping) in the unit below Plaintiff for the entire time living in the complex. Plaintiff must wear a mask often while in the apartment due to the smells, but since violator is in the unit below, the smells seep through even with shut windows.

222.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the violation of nuisance against the Plaintiff's and each action was in furtherance of that violation.

223.    Plaintiff seeks all available damages, including injunctive relief, lost use and enjoyment of property (inconvenience), and emotional distress. Punitive damages should apply since Defendants' actions were intentional, malicious or reckless and gross negligence should apply.

## TWENTIETH CAUSE OF ACTION

### INVASION OF PRIVACY, CALIFORNIA CIVIL CODE § 1708.8

224.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

225.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

226.    Defendants have discriminated against Plaintiff through chronic and systemic

**DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

227.  The invasion of privacy law protects individuals from having their private, personal or familial activities captures without their consent, especially when it involves entering their property or airspace to do so.

228.  The Defendants are libel if they knowingly enter Plaintiff's property or airspace without permission to capture visual images or sound recordings of someone engaging in private activities. This also includes situations where the capturing occurs in a way that is offensive to a reasonable person. This occurred when Peter entered to tamper with Plaintiff's washer-dryer appliance. As he approached the washer-dryer closet he said aloud, "This is the old washer dryer and this is the new washer dryer." He had no permission to record inside the unit. The two employees, David-1 and girl, that entered to damage the stove handle and to take notes into the ipad. They had no permission to record inside the unit.

229.  ALL **DEFENDANTS' CONDUCT** was a substantial factor in the violation of privacy against the Plaintiff's and each action was in furtherance of that violation.

230.  Plaintiff seeks all available damages. Also, Damages economic and noneconomic including emotional distress, statutory damages (up to $30k) punitive, reasonable attorney fees, and costs. Violators may also face a civil fine of $5k to $50k.

## TWENTY-FIRST CAUSE OF ACTION

### DEFAMATION LIBEL, CALIFORNIA CIVIL CODE § 45

231.  Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

232.  GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

233.  Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at

the One Paseo apartment complex.

234.    Defamation is a false statement of fact that is harmful to the person's reputation, is published, and is read or heard by someone other than the person being talked about.

235.    Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.

236.    Employee BARR defamed Plaintiff when she intentionally generated the false Eviction notice to Plaintiff regarding rent. The "notice to pay rent or quit" came in written form stuck to my door. Plaintiff contends others in the front office saw this notice, or at a minimum, was discuss with others at One Paseo or GREYSTAR.

237.    The Publication of Plaintiff's false eviction is false statement that is unprivileged, written, cause harm as it would cause harm to any reasonable person, is a violation of defamation.

238.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the defamation against the Plaintiff's and each action was in furtherance of that violation.

239.    Plaintiff seeks all available damages, including special and compensatory. Punitive damages are awarded to punish the Defendants and deter similar conduct.

## TWENTY-SECOND CAUSE OF ACTION

## SLANDER, CALIFORNIA CIVIL CODE § 46

240.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

241.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

242.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at

the One Paseo apartment complex.

243.    Defamation is a false statement of fact that is harmful to the person's reputation, is published, and is read or heard by someone other than the person being talked about.

244.    Specifically, slander includes statements that charge a person with a crime or with having been convicted or punished for one.\

245.    Employee BARR defamed Plaintiff when she intentionally generated the false Eviction notice to Plaintiff regarding rent. Illegally evicting a tenant is a crime. Plaintiff would argue that a false accusation should be a crime too. The "notice to pay rent or quit" came in written form attached to Plaintiff's door. Plaintiff contends others in the front office saw this notice, or at a minimum, was discuss verbally with others at One Paseo or GREYSTAR.

246.    The Publication of Plaintiff's false eviction is false statement that is unprivileged, spoken, cause harm as it would cause harm to any reasonable person, is a violation of slander.

247.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the slander against the Plaintiff's and each action was in furtherance of that violation.

248.    Plaintiff seeks all available damages, including actual, special and compensatory. Punitive damages are awarded to punish the Defendants and deter similar conduct.

## **TWENTY-THIRD CAUSE OF ACTION**

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, CACI 1600**

249.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

250.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as   under principle of respondeat superior   where an employer is responsible for the actions of its employees within the scope of their employment.

251.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** (intentional, reckless, extreme, and outrageous conduct) throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment

complex substantially caused severe emotional distress.

252.    California Civil Code § 1708.7(a)(1) provides that Defendant intentionally or recklessly causes another person to suffer severe emotional distress through extreme and outrageous conduct.

253.    The term "emotional distress" expressly includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

254.    The term "severe emotional distress" expressly states Defendants' conduct must be so substantial or long lasting that no reasonable person in a civilized society should be expected to bear it. Plaintiff is not expected to prove physical injury to recover damages.

255.    The term "extreme and outrageous distress" expressly states that Defendants' conduct must be so outrageous and extreme that they go beyond all bounds of decency and chock the conscience of a reasonable person.

256.    Defendants' intentional, reckless, extreme, and outrageous conduct over the duration of Plaintiff's five (5) year tenancy substantially caused severe emotional distress is outlined throughout this Compliance.

257.    A reasonable person in a civilized society would not expect to have all of the unbearable actions and events highlighted in this Complaint to have happened for one (1) day, much less ongoing and incremental over Plaintiff's duration of tenancy at One Paseo.

258.    Some of the more egregious actions include the actions by employees actions when maintenance employees left a broken washer-dryer unit occupying more than 50% of Plaintiff's apartment from November 15, 2021 until May 2024. Maintenance had 30-days to repair and failed to do so. Also, employees broke/tampered with Plaintiff's replacement personal washer-dryer rending it unusable beginning September 2022 to present as of filing. In addition, employees continually rented the apartment below to smokers (cigarette, pot, vaping) and failed to prevent smoking of those tenants over five (5) year period. Finally, Property managers and CEO AMAN failed to respond to Plaintiff and issues continue through this day.

259.    Defendants' intentional, reckless, extreme, and outrageous conduct over the duration of

1    Plaintiff's five (5) year tenancy substantially caused severe emotional distress

2    260.    ALL **DEFENDANTS' CONDUCT** (intentional, reckless, extreme, and outrageous)

3    was a substantial factor in the intentional infliction of emotional distress against the

4    Plaintiff's and each action was in furtherance of that violation.

5    261.    Plaintiff seeks all available damages. Damages include Compensatory damages,

6    including mental anguish, pain and suffering, loss of enjoyment for diminished quality of

7    life. Punitive damages for particularly egregious behavior and deter similar conduct in the

8    future. Attorney fees as necessary.

9                    **TWENTY-FOURTH CAUSE OF ACTION**

10                   **NEGLIGENCE, CALIFORNIA CIVIL CODE § 1714**

11   262.    Plaintiff incorporates by reference each and every allegation in the foregoing

12   paragraphs of this Complaint.

13   263.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through

14   vicarious liability for actions of their employees, even if they were not directly involved in

15   the wrongdoing, as under principle of respondeat superior where an employer is

16   responsible for the actions of its employees within the scope of their employment.

17   264.    Defendants have discriminated against Plaintiff through chronic and systemic

18   **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at

19   the One Paseo apartment complex.

20   265.    Negligence requires duty of care, breach, causation, and damages.

21   266.    ALL Defendants have a duty of care to all tenants, including Plaintiff. They breached

22   that duty with **DEFENDANTS' CONDUCT**. Defendants actions or omissions were the

23   actual and proximate cause and a substantial factor in causing Plaintiff's harm. Finally,

24   Plaintiff suffered actual damages, including pain and suffering, property damages, and

25   financially.

26   267.    Gross negligence occurs with a higher stand of negligence which is achieve by Plaintiff

27   due the long duration, the unconscionability of the event, the amount of cause of actions

28   during this period, and incremental nature of the violations. This makes the violation

relevant for punitive damages. **DEFENDANTS' CONDUCT** have happened over the five (5) years of tenancy in an ongoing and incremental manner over Plaintiff's duration at One Paseo.

268.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the negligence against the Plaintiff's and each action was in furtherance of that violation.

269.    Plaintiff seeks all available damages. Given gross negligence is applicable, this is eligible for punitive damages.

### TWENTY-FIFTH CAUSE OF ACTION

### NEGLIGENT HIRING, SUPERVISION, RETENTION OF EMPLOYEE CACI 426,

270.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

271.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

272.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

273.    Negligent hiring, supervision or retention of employee occurs when an employer fails to take reasonable steps to ensure an employee is fit for their role and does not cause harm to others.

274.    With respect to the Greystar employees, there appears to be a lack of basic Landlord-Tenant law which should have been a requirement for employment, and something that should have been monitored with proper supervision. **DEFENDANTS' CONDUCT** shows repeated lack of knowledge necessary as employment in the where the owner/landlord is in Real Estate, and employees manage an apartment complex. This unconscionable actions occurred through the Plaintiff's five (5) year tenancy in an ongoing and incremental manner.

275.    With respect to the Kilroy employees, the Kilroy CEO, as landlord, did not response in

a reasonable thirty (30) day. period to an escalation of the conduct occurring at One Paseo, despite a photo and detailed emails with attached documents detailing specifics.

276.   These require only a basic understand even the most basic Landlord-Tenant law which should have been a requirement for employment as a CEO of a real estate company, and it is something that should have been monitored with proper supervision.

277.   KILROY, as a real estate company, should have known to hire a property management company that appropriately enforces Landlord-Tenant law and the property management company should have been properly evaluated for compliance. KIROY hired GREYSTAR as a property management company, and failed to manage them properly, permitting GREYSTAR to break federal and state laws from November 2021 to present date as of time of filing.

278.   Plaintiff has had to endure most of these issues for multiple years. Plaintiff has had no functioning washer-dryer unit, sans the limited seven (7) months post purchase of her personal washer-dryer. The apartment was supposed to be furnished with a functioning washer-dryer as part of rent.  One Paseo is supposed to be a smoke-fee complex, inside and out, and the employees continued to place smokers (cigarette, pot, vaping) in the unit below Plaintiff for the entire time living in the complex. Despite continuous breach of contract issues, Plaintiff's rent continues to sky-rocket and illegal charges continue to be applied to the monthly rental charge with no ability to pay only for valid charges.

279.   The negligence in hiring, supervising, or retaining, from KILROY and its employees, and GREYSTAR and its employees, was a substantial factor in causing Plaintiff's harm as highlighted in this Complaint over a five (5) year period. These employees were retained, moved to another location or promoted, even when Plaintiff identified them by name.

280.   ALL **DEFENDANTS' CONDUCT** was a substantial factor in the negligent hiring, supervision or retention of employees against the Plaintiff's and each action was in furtherance of that violation.

281.   Plaintiff seeks all available damages.

### TWENTY-SIXTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CACI 1620

282.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

283.     GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

284.     Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

285.     ALL **DEFENDANTS' CONDUCT** was a substantial factor in the negligent infliction of emotional distress against the Plaintiff's and each action was in furtherance of that conspiracy.

286.     Negligent Infliction of Emotional Distress occurs when Defendant(s) conduct causes Plaintiff to suffer serious emotional distress.

287.     The term "emotional distress" expressly includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

288.     The term "serious emotional distress" expressly exists if an ordinary, reasonable person would be unable to cope with it.

289.     Defendants egregious and unconscionable conduct over the duration of Plaintiff's five (5) year tenancy is outlined throughout this Compliance. The Defendants conduct was negligent. The negligence cause of action is identified in twenty-fifth cause of action and is repeated below. The term "Serious emotional distress" expressly states it exists if an ...ordinary, reasonable person would be unable to cope with it.

290.     A reasonable person would expect not to have all of the actions and events highlighted in this Complaint to have happened for one (1) day, much less ongoing and incremental over Plaintiff's duration at One Paseo, which was caused substantial harm and serious emotional distress.

291.    ALL **DEFENDANTS' CONDUCT** was a substantial factor in the negligent infliction of emotional distress against the Plaintiff's and each action was in furtherance of that conspiracy.

292.    Plaintiff seeks all available damages.

### TWENTY-SEVENTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONAL CODE § 17200

293.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

294.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

295.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

296.    California Business & Professional Code § 17200, also known as the California Unfair Competition Law, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

297.    California Business & Professional Code § 17204 allows "any person acting for the interests of itself, its members or the general public" to prosecute a civil action for violation of the Unfair Competition Law.

298.    As set forth herein the employees of Greystar committed unlawful, unfair, and/or fraudulent business acts and practices as defined by California Business & Professional Code § 17200, by engaging in the following acts or acts of omission, without limitation:

299.    By violating the foregoing statutes and regulations, the acts of Defendants, and each of them, constitute unfair and unlawful business practices under the California Business and Professions Code sections 17200 *et seq.* for which Plaintiff is entitled to statutory damages, equitable relief, and attorney fees and costs incurred in bringing this action

300. ALL **DEFENDANTS' CONDUCT** was a substantial factor in the violation of California's Business & Professional Code against the Plaintiff's and each action was in furtherance of that violation.

301. Plaintiff seeks all available damages.

## TWENTY-EIGHTH CAUSE OF ACTION

### BURGLARY CALIFORNIA PENAL CODE § 459

302. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

303. GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior where an employer is responsible for the actions of its employees within the scope of their employment.

304. Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

305. Burglary under section 459 of California's Penal Code defines burglary as entering a structure (including an apartment) with the intent to commit a felony or theft (grand of petit larceny). It is important to note that entry doesn't always require a break-in, even entering through an open door with the intent to steal qualifies as burglary.

306. Employee Peter entered Plaintiff's apartment under the false need to check the water mater and with the intent to commit burglary to deprive Plaintiff of her property, the new washer-dryer appliance. Given the washer-dryer appliance cost over $950, the lose of the appliance constitutes a felony. First degree residential burglary involves entering an inhabited dwelling with the intent to commit theft or any felony. It is always a felony.

307. Employee Peter's burglary actions caused Plaintiff harm as it left Plaintiff with no washer-dryer for years.

308. ALL **DEFENDANTS' CONDUCT** was a substantial factor in the burglary against the Plaintiff's and each action was in furtherance of that violation.

309.    Plaintiff seeks all available damages. Civil Damages could include value/cost of stolen property, and repair costs for any damage to the residence. Penalties can result to up to six years in state prison.

### TWENTY-NINTH CAUSE OF ACTION

### FINANCIAL FRAUD, CALIFORNIA CIVIL CODE,  § 1572

310.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

311.    GREYSTAR, BFAITH, TBARR, KILROY, JOHNJR, and AMAN are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as  under principle of respondeat superior  where an employer is responsible for the actions of its employees within the scope of their employment.

312.    Defendants have discriminated against Plaintiff through chronic and systemic **DEFENDANTS' CONDUCT** throughout the duration of Plaintiff's five (5) year tenancy at the One Paseo apartment complex.

313.    Financial fraud requires an intentional misrepresentation of a false statement, knowledge of its falsity, intent to induce reliance, justifiable reliance, gained financial advantage, and damages.

314.    Employee BARR intentionally made false statements about Plaintiff's rent being late and sent Plaintiff a "Notice to pay rent or quit" on April 7, 2025. Plaintiff paid rent on April 2, 2025. After rent was paid, employee BARR made changed to the system and added all new pricing with a significant increase in the monthly rental payment. Employee BARR knew it was false because the electronic system indicates when payments are made. Plaintiff relies on that electronic system for payment purposes. Plaintiff has no choice but the pay the amount that GREYSTAR posts in its electronic payment system so Plaintiff's reliance was justifiable. As a result, employee BARR also posted and increase in rent payment for two previous months in which Plaintiff already paid rent for $1,822.00 each month for two months, resulting in $3,644.00 additional dollars moved into May's posted rent. This is a violation of actual and financial fraud. Plaintiff sent a note to employee BARR stating that

the back-dated charges were illegal. There was no response at time of filing.

315.   ALL **DEFENDANTS' CONDUCT** was a substantial factor in the financial fraud against the Plaintiff's and each action was in furtherance of that violation.

316.   Plaintiff seeks all available damages. Treble damages (3 times actual damages) are a legal remedy intended to punish egregious behavior and deter future misconduct, particularly against theft-related business torts such as this

<u>**PRAYER**</u>

**WHEREFORE,** Plaintiff prays for judgment as follows:

1.   Awarding compensatory, incidental, and consequential damages, in an mount that the Court or jury determines, in accordance with applicable law;

2.   Providing for any and all injunctive relief the court deems appropriate;

3.   For punitive damages, including treble damages, regarding the egregious and outrageous conduct of Defendants according to proof, but not less than One (1) Billion Dollars;

4.   For judgment in favor of Plaintiff and against each Defendant on all causes of action;

5.   Awarding Defendants disgorge all monies retained which were to be paid to Plaintiff;

6.   For all available relief under the California Business and Professions Code, including, an injunction ordering Defendants cease their unlawful and unfair business practices;

7.   Awarding Plaintiff reasonable costs and expenses of suit, including attorney fees;

8.   Awarding statutory damages in the maximum amount the law provides;

9.   Awarding for pre-judgement and post-judgement interest to extent the law allows;

10.  For such other and further relief as this Court may deem fair, just, equitable and proper.

Respectfully submitted,

Dated: May 26, 2025

**LAURA SAITTA**

/Signed per Cal. Rules Court rule 2.257/

By:   __/s/ Laura Saitta_____
Plaintiff in Pro Per Laura Saitta

1
2
3
4
5
6
7
8
9
10                              EXHIBIT 1
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Saitta v Greystar COMPLAINT - EXHIBIT 1 - Plaintiff photo 042424 of broken washer-dryer



*Saitta v. Greystar*
Complaint