**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA SAITTA,<br><br>                                      Plaintiff,<br><br>   v.<br><br>GREYSTAR; BOB FAITH; et al.,<br><br>                                      Defendants. | Case No.: 25-cv-1135-DMS-AHG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). (Defendants' Motion ("Defs.' Mot."), ECF No. 25.) Plaintiff, proceeding pro se, filed a response in Opposition. (Plaintiff's Opposition ("Opp'n"), ECF No. 23.)[1]  For the following reasons, the Court **GRANTS** Defendants' Motion.  In light of this disposition, the Court also **DENIES** Plaintiff's Motions for Preliminary Injunction, Motion for Entry of Default, and Motion to Accept Previous Service of Process.  (ECF Nos. 18, 20–21, 24.)

---

[1] Plaintiff responded to Defendants' Motion before it was placed on the docket. Plaintiff's responses are based on a summary of arguments provided by Defendants in an email dated June 12, 2025. (Opp'n Exhibit 1.)

1

## I. BACKGROUND

Plaintiff sues for alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 1985, the Sherman Act, the Clayton Act, and various California state laws for a total of twenty-nine causes of action. (Plaintiff's First Amended Complaint ("FAC"), ECF No. 12.) Since March 2020, Plaintiff has resided at One Paseo Village ("One Paseo"), an apartment community owned by Defendant Kilroy Realty, L.P. ("Kilroy") and managed by Defendants Greystar Real Estate Partners, LLC; Greystar Management Services, LLC; and Greystar California, Inc. (collectively, "Greystar"). (FAC ¶¶ 5–6, 22–23); (Defs.' Mot. at 1.)

Plaintiff alleges that on November 14, 2021, she placed a request through the One Paseo maintenance tracking system to repair leaks originating from her in-unit washing machine and kitchen sink. (FAC ¶ 27.) While the leak from the sink was resolved the following day, maintenance staff was unable to fix the washing machine. (*Id.*) Maintenance staff returned to Plaintiff's apartment nearly one month later to attempt to fix the washing machine, but the attempt was ultimately unsuccessful. (*Id.*) The washer-dryer unit was then removed from its designated closet and placed in a manner that blocked access to the second bedroom. (*Id.* ¶¶ 27–28.) The maintenance staff's refusal to replace the broken washing machine caused Plaintiff to purchase and install a new washer-dryer unit the following week. (*Id.*)

While the broken washer-dryer unit blocked access to the second bedroom, Plaintiff alleges maintenance staff would respond to other requests but would refuse to remove the washer-dryer unit despite Plaintiff's repeated requests. (*Id.* ¶ 30.) Plaintiff contends that during these visits to her apartment unit, maintenance staff caused further damage to Plaintiff's apartment, such as partially disconnecting the oven handle, which maintenance staff later refused to repair. (*Id.* ¶¶ 32–33.) Plaintiff also alleges that following another visit by a maintenance employee in September 2022, the washer-dryer closet emitted a headache-inducing odor from an exposed waste exit pipe leading Plaintiff to attempt to confine the odor by sealing the closet with plastic garbage bags and tape. (*Id.* ¶ 34.)

Plaintiff contends that during a fire inspection of the second bedroom—in which Plaintiff was given no notice—on May 13, 2024, nearly twenty months after Plaintiff sealed the closet, employees of Defendant Greystar, including Defendant Theresa Barr, required Plaintiff to "peel off the sealed tape for the toxic smells" so the employees could inspect whether there were any leaks from the sprinkler in the closet. (*Id.* ¶ 37.) Plaintiff alleges the broken washer-dryer unit was eventually removed from her apartment in May 2024. (*Id.*)

Plaintiff further alleges that during her tenancy at One Paseo, monthly rent payment increased from $4,436.00 in March 2020 to $11,308.61 (including two $1,822 "back-dated" fees and a 2.9% credit card charge) in May 2025. (*Id.* ¶¶ 24–25, 36, 38, 40, 42–44.) Plaintiff attempted to contact Defendant Angela Aman, the Chief Executive Officer of Defendant Kilroy, on January 14, 2025, regarding "egregious and unconscionable ongoing issues" Plaintiff faced at One Paseo. (*Id.* ¶ 39.) Plaintiff has yet to receive a response from Defendant Aman. (*Id.*)

Plaintiff has filed a 51-page FAC seeking relief in this Court from Defendant Greystar and Defendant Kilroy, as well as Defendant Bob Faith (the Chief Executive Officer of Greystar), Defendant Angela Aman (the current Chief Executive Officer of Kilroy), Defendant John B. Kilroy Jr. (the former Chief Executive Officer and Chairman at Kilroy), Defendant Theresa Barr (the General Manager for Greystar at One Paseo), and Defendants DOES 1 to 100 (collectively, "Individual Defendants") for the following: "Violation of Federal Housing Act (42 U.S.C. § 3601 *et seq*, Discrimination based on sex); Violation of Federal Housing Act (42 U.S.C. § 3601 *et seq*, Discrimination in eviction proceedings); Violation of Federal Conspiracy to interfere with Civil Rights (42 U.S.C. § 1985); Violation of Federal Sherman Act [(15 U.S.C. §§ 1–7)]; Violation of Federal Clayton Act (15 U.S.C. §§ 12–27);" and twenty-four California state laws. (*See generally id.*)

/ / /

/ / /

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. DISCUSSION

In their Motion to Dismiss, Defendants first argue that the causes of action against the Individual Defendants in Plaintiff's FAC should be dismissed under the doctrine of *respondeat superior*. (Defs.' Mot. at 4–5.) Defendants then argue that the FAC should be dismissed in its entirety on two theories: (1) Plaintiff failed to provide a short and plain

statement of any claim showing her entitlement to relief as required by Federal Rule of Civil Procedure 8; and (2) Plaintiff's FAC does not contain sufficient factual matter for any federal claim as required by Federal Rule of Civil Procedure 12(b)(6), and this Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to Federal Rule of Civil Procedure 12(b)(1).  (*Id.* at 5–11.)  The Court partially agrees with Defendants.

### A. Respondeat Superior

The doctrine of *respondeat superior* shifts onto the employer any liability that would otherwise fall onto an employee acting in the scope of their employment. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("[P]rincipals or employers [are ordinarily] vicariously liable for acts of their agents or employees in the scope of their authority or employment.").

Plaintiff argues that the Individual Defendants "are liable through vicarious liability for actions of their employees, even if they were not directly involved in the wrongdoing, as under principle of respondeat superior."  (FAC ¶¶ 48, 56, 66, 74, 93, 104, 111, 120, 129, 141, 149, 161, 171, 178, 186, 194, 201, 209, 217, 225, 232, 241, 250, 263, 271, 283, 294, 303, 311); (Opp'n at 4.)  However, these Individual Defendants are themselves employees or agents of Defendant Kilroy or Defendant Greystar.  (Defs.' Mot. at 4); (FAC ¶¶ 3–4, 7–8.)  Therefore, the doctrine of *respondeat superior* relieves Individual Defendants of liability for acts committed in the scope of their authority or employment.  Because the FAC is devoid of any facts suggesting the Individual Defendants were acting outside the scope of their authority or employment, the doctrine of *respondeat superior* makes only their employer, Defendant Kilroy or Defendant Greystar, potentially liable for their conduct.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims against the Individual Defendants without prejudice.

### B. Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and "simple, concise, and direct" allegations. Fed. R. Civ. P. 8.  The Ninth Circuit has emphasized that verbosity or length is insufficient

to violate Rule 8 unless the complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (internal quotation marks and citations omitted). Further, despite all complainants being bound by the rules of procedure, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

Here, Defendants argue that none of Plaintiff's claims in the FAC are "short and plain" or "simple, concise, and direct" as required by Rule 8. (Defs.' Mot. at 6–7.) Defendants support this argument by presenting prior dismissals of *pro se* complaints, focusing on the length of each complaint—each being substantially lengthier than Plaintiff's FAC here. (*Id.*) Regardless of the FAC's length, the Complaint is well organized, setting forth grounds for this Court's jurisdiction, a statement of facts Plaintiff finds relevant to each of her causes of action, separately enumerated causes of action, a brief recitation of the relevant law and factual allegations under each cause of action, and a detailed prayer for relief. There is no indication that the FAC is so confused, ambiguous, vague, or otherwise unintelligible to warrant dismissal under Rule 8. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's FAC on Rule 8 grounds.

**C. Federal Rules of Civil Procedure 12(b)(6) & 12(b)(1)**

### 1. First and Second Causes of Action

The Ninth Circuit has held that FHA claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) when the complaint "fail[s] to allege facts sufficient to show that [the plaintiff] was subject to severe or pervasive harassment based on [the plaintiff's status in a protected class], that defendants interfered with the exercise of [the plaintiff's] rights under the FHA, that [the plaintiff] suffered a distinct and palpable injury caused by defendant's discriminatory conduct, or that [the plaintiff] was retaliated against for protected activity." *Whiting v. Coachella Valley Hous. Coal.*, 2024 U.S. App. LEXIS 30015, at *1–2 (9th Cir. Nov. 26, 2024).

Here, Defendants argue Plaintiff's FHA claims should be dismissed because they are merely conclusory. (Defs.' Mot. at 8.) The first cause of action claims Defendants discriminated against Plaintiff based on sex, but there are no facts alleged in the FAC to support the claim. (FAC ¶¶ 47–54.) The second cause of action claims Defendants further discriminated against Plaintiff but failed to articulate whether the alleged discrimination was based on sex or another protected class. (FAC ¶¶ 55–64.) Because there are no facts alleged in the FAC to plausibly support a claim that Plaintiff was discriminated against based on her inclusion in any protected class, the Court **GRANTS** Defendants' Motion to Dismiss the first and second causes of action without prejudice.

### 2. Third Cause of Action

A claim of conspiracy to interfere with civil rights under 42 U.S.C. § 1985 "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *see also Biro v. Keyes*, 2025 U.S. App. LEXIS 646, at *2 (9th Cir. Jan. 13, 2025) (affirming 12(b)(6) dismissal of Section 1985 claims where complaint contained only conclusory allegations that co-defendants "conspired" together because they were Jewish and appeared to have similar interests). Within the conspiracy, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Plaintiff contends that "all the relevant One Paseo employees knew about and their actions were in furtherance of the conspiracy" to deny Plaintiff of "her Federal right" to be free from discrimination.[2]  (FAC ¶¶ 65–72.) Defendants argue this is unsupported by sufficient factual specificity. (Defs.' Mot. at 9.) Plaintiff's allegations that multiple

---

[2] Plaintiff cites to Section 1985(2) specifically, which prohibits conspiring to interfere with United States court proceedings. (FAC ¶ 67); *see* 42 U.S.C. § 1985(2). The FAC alleges no facts to support such a claim, and Defendants chose to argue against the plausibility of relief under Section 1985 generally. (Defs.' Mot. at 9.)

employees, on several occasions, engaged in conduct that created undesirable living conditions at One Paseo for Plaintiff are relevant to her claim of conspiracy. (*See* FAC ¶¶ 27, 32, 35, 37, 39, 43.) However, without further factual content showing that Defendants conspired to engage in said conduct and did so under an invidiously discriminatory animus, the third cause of action fails to state a claim. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the third cause of action without prejudice.

### 3. Fourth and Fifth Causes of Action

The Sherman Antitrust Act of 1890 was enacted to protect trade and commerce against unlawful restraints and monopolies. *See* 15 U.S.C. §§ 1–7. The Clayton Antitrust Act of 1914 supplemented the Sherman Act in furtherance of this purpose by addressing specific practices the Sherman Act did not explicitly prohibit. *See* 15 U.S.C. §§ 12–27. For any claim brought under the Sherman Act or the Clayton Act, a plaintiff must plausibly allege anticompetitive conduct that caused or threatens to cause harm to fair competition in a defined product and geographic market. The anticompetitive conduct under Section 1 of the Sherman Act must include an illegal agreement in restraint on interstate trade or commerce. 15 U.S.C. § 1; *see Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984) ("[T]he Sherman Act [only] prohibit[s] unreasonable restraints of trade . . . effected by a contract, combination, or conspiracy."). Under Section 7 of the Clayton Act, the prohibited conduct must include an acquisition of "stock or other share capital" that substantially lessens competition or purports to create a monopoly. 15 U.S.C. § 18.

The heart of Plaintiff's claims here is that "Defendant Greystar violates [the Sherman Act and Clayton Act] through market allocation by serving as the managing intermediary for various apartment owners," including Defendant Kilroy, which allows for price fixing across multiple owners through a "merger-like" presence, predominantly in San Diego, California. (FAC ¶¶ 82–83, 93.) This allegation fails to state a claim under both Acts.

First, the FAC alleges Defendant Greystar was engaged in "market allocation," which implies there was an agreement among competitors in violation of Section 1 of the Sherman Act. (FAC ¶¶ 75, 76, 80, 82, 83.) However, the only agreements mentioned in

the FAC are between Defendant Greystar and the owners of the properties Greystar manages, including Defendant Kilroy. (*Id.* ¶ 82.) These types of agreements are well within the bounds of fair competition and are essential for the success of real estate management companies, regardless of their size. The FAC is devoid of any factual allegations that Defendant Greystar contracted with, entrusted, or conspired with other property management companies to allow Defendant Greystar to attempt to monopolize rental property management in San Diego, which may amount to a violation of the Sherman Act.

Second, Plaintiff alleges that Defendant Greystar's management of multiple residential properties in San Diego creates the same effect of a merger among the competing owners of those properties, resulting in fewer choices and high prices for consumers, in violation of the Clayton Act. (*Id.* ¶ 98.) However, the acquisition of "any part of the stock or other share capital" is a requisite element under Section 7 of the Clayton Act. 15 U.S.C. § 18. Because the FAC lacks facts of any Defendant acquiring any share capital, let alone doing so in a way that substantially lessens competition in a particular market, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's fourth and fifth causes of action without prejudice.

### 4. Remaining Causes of Action

Because Plaintiff has failed to allege a violation of federal law, the Court exercises its discretion to **GRANT** Defendants' Motion to Dismiss Plaintiff's pendent state law claims without prejudice. 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— [it] has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of America v.*

*Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").[3]

## IV. LEAVE TO AMEND

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend "shall be freely given when justice so requires". Fed. R. Civ. P. 15(a). "[T]his policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). A court should grant leave to amend where there is no (1) "undue delay", (2) "bad faith or dilatory motive", (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007). However, "[a] district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks and citation omitted).

Here, the Court **GRANTS** Plaintiff leave to amend all claims. Her claims against the Individual Defendants are subject to leave to amend so Plaintiff has an opportunity to allege whether any of the employees of Defendant Greystar or Defendant Kilroy acted outside the scope of their employment. Plaintiff may also amend her federal claims against Defendant Greystar and Defendant Kilroy because the deficiencies in the FAC may be curable. *Lopez v. Smith*, 203 F.3d 1122, 1135 (9th Cir. 2000) ("[T]he pro se litigant must

---

[3] In light of the dismissal of the FAC, the Court elects to decide Plaintiff's Motions for Preliminary Injunction on the merits rather than assess Defendants' procedural argument that the Motions should be stricken due to Plaintiff's failure to serve. (ECF No. 26.) Because all claims in the FAC have been dismissed, Plaintiff has failed to meet the "likelihood of success on the merits" factor of the *Winter* test. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Accordingly, both of Plaintiff's Motions for Preliminary Injunction (ECF Nos. 18 and 21) are **DISMISSED** without prejudice. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements].") (internal quotation marks and citation omitted) (brackets in original).

be given notice of the deficiencies in his complaint and an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment.") (Rymer, J. concurring) (internal quotation marks and citation omitted).

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's FAC with leave to amend and **DENIES** Plaintiff's Motions for Preliminary Injunction. Plaintiff's Motions for Entry of Default and to Accept Previous Service of Process are **DENIED** as moot.

Within forty-five (45) days of the date of this Order, Plaintiff may file a Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: July 14, 2025

Hon. Dana M. Sabraw
United States District Judge